**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:10-cv-01808-CMA-MEH

MORTON FINKEL, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

AMERICAN OIL & GAS INC., a Nevada Corporation,
PATRICK D. O'BRIEN, ANDREW P. CALERICH,
JON R. WHITNEY, NICK DEMARE,
C. SCOTT HOBBS, HESS CORPORATION, a Delaware Corporation, and
HESS INVESTMENT CORP., a Nevada Corporation,

      Defendants.

---

Civil Action No. 1:10-cv-01833-PAB-MEH

EDGAR COBB, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

AMERICAN OIL & GAS INC., a Nevada Corporation,
PATRICK D. O'BRIEN, ANDREW P. CALERICH,
JON R. WHITNEY, NICK DEMARE,
C. SCOTT HOBBS and
HESS CORPORATION, a Delaware Corporation

      Defendants.

---

**PLAINTIFF EDGAR COBB'S OPPOSITION TO THE FINKEL PLAINTIFFS GROUP'S
MOTION FOR APPOINTMENT OF PLAINTIFFS' LEAD AND LIAISON COUNSEL
AND CROSS-MOTION FOR APPOINTMENT OF LEAD COUNSEL**

Civil Action No. 1:10-cv-01846-MSK-KMT

JEFFREY P. FEINMAN, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

v.

AMERICAN OIL & GAS INC., a Nevada Corporation,
PATRICK D. O'BRIEN, ANDREW P. CALERICH,
JON R. WHITNEY, NICK DEMARE,
C. SCOTT HOBBS, HESS CORPORATION, a Delaware Corporation, and
HESS INVESTMENT CORP., a Nevada Corporation,

     Defendants.

_____

Civil Action No. 1:10-cv-01852-LTB

JEFFREY VEIGEL, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

v.

AMERICAN OIL & GAS INC.,
PATRICK D. O'BRIEN, ANDREW P. CALERICH,
JON R. WHITNEY, NICK DEMARE,
C. SCOTT HOBBS and
HESS CORPORATION

     Defendants.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     ROBBINS GELLER IS THE LAW FIRM BEST QUALIFIED TO REPRESENT
        THE INTERESTS OF THE SHAREHOLDERS AND WILL DO SO IN THE
        MOST STREAMLINED, EFFICIENT MANNER POSSIBLE .........................................5

III.    THE FINKEL PLAINTIFFS GROUP'S PROPOSED STRUCTURE
        THREATENS INEFFICIENCY AND UNNECESSARY EXPENSES ...........................9

IV.     CONCLUSION.....................................................................................................12

578190_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bell v. Ascendant Solutions, Inc.*,
    No. 3:01-CV-0166-P, 2002 WL 638571
    (N.D. Tex. Apr. 18, 2002) ..........................................................................................................10

*Cortese v. Radian Group, Inc.*,
    No. 07-3375, 2008 WL 269473
    (E.D. Pa. Jan. 30, 2008) ...............................................................................................................5

*Crawford v. Onyx Software Corp.*,
    No. C 01-1346L, 2002 WL 356760
    (W.D. Wash. Jan. 10, 2002) ........................................................................................................11

*Feldman v. Walden Residential Props. Inc.*,
    No. CC-99-11645-07 (Dallas County Ct., Tex.) ...........................................................................5

*Freedom, N.Y., Inc. v. United States*,
    49 Fed. Cl. 713 (Fed. Cl. 2001) ...................................................................................................3

*Friedman v. Rayovac Corp.*,
    219 F.R.D. 603 (W.D. Wisc. 2002) .............................................................................................10

*Harbor Fin. Partners v. Irvine Apartment Communities*,
    No. 802731 (Cal. Super. Ct., Orange County) ..............................................................................5

*Hattan v. Restoration Hardware Inc.*,
    No. CV 075563 (Cal. Super. Ct., Marin County) .........................................................................2

*In re ACS Shareholders Litig.*,
    No. 4940-VCP (Del. Ch.) ..........................................................................................................3, 7

*In re Cameron Ashley Sec. Transaction*,
    No. 00-0971-A (Dallas County Ct., Tex.) ....................................................................................6

*In re Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio. 2005) ...............................................................................................8

*In re Chiron S'holder Deal Litig.*,
    No. RG 05-230567 (Cal. Super Ct., Alameda County) .................................................................2

- ii -

**Page**

*In re Corrections Corp. S'holders Litig.*,
No. 98-1257-III (Davidson County Ch. Ct., Tenn.)................................................6

*In re Dole S'holders Litig.*,
No. BC281949 (Cal. Super. Ct., Los Angeles County) .........................................5

*In re Electronic Data Systems Class Action Litig.*,
No. 366-01078-2008 (Collin County Dist. Ct., Tex.)............................................2

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ................................................................8

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002).........................................................................8

*In re Enron Corp. Sec. Litig.*,
No. H-01-3624 (S.D. Tex.) ..................................................................................8

*In re Goody's Family Clothing, Inc. S'holder Litig.*,
No. 165357-2 (Knox County Ch. Ct., Tenn.) ......................................................6

*In re iPayment, Inc. S'holder Litig.*,
No. 05-1250-I (Davidson County Ch. Ct., Tenn.) ...............................................6

*In re Ivan F. Boesky Sec.*,
948 F.2d 1358 (2d Cir. 1991)..............................................................................1

*In re MicroStrategy Inc., Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) ...............................................................11

*In re Milestone Sci. Sec. Litig.*,
187 F.R.D. 165 (D.N.J. 1999)............................................................................10

*In re PETCO Animal Supplies, Inc. S'holder Litig.*,
No. GIC-869399 (Cal. Super. Ct., San Diego County)......................................3, 7

*In re Pfizer Inc. Sec. Litig.*,
233 F.R.D. 334 (S.D.N.Y. 2005) .........................................................................9

- iii -

**Page**

*In re Reliant Sec. Litig.*,
   No. 02-1810, 2002 U.S. Dist. LEXIS 27777
   (S.D. Tex. Aug. 29, 2002)................................................................................4, 9, 10

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999).............................................................4, 10, 11

*In re Veeco Instruments, Inc.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) ..............................................................................9

*In re Waste Mgmt., Inc. Sec. Litig.*,
   128 F. Supp. 2d 401 (S.D. Tex. 2000) ....................................................................11

*Joseph v. Heisley*,
   No. 20188-NC (Del. Ch.).........................................................................................6

*Miller v. Ventro Corp.*,
   No. C 01-01287 SBA, 2001 WL 34497752
   (N.D. Cal. Nov. 28, 2001) .....................................................................................10

*Pennsylvania Avenue Partners LLC v. King Power Int'l Group Co., Ltd.*,
   No. A455306 (Clark County Dist. Ct., Nev.) ..........................................................6

*Schriver v. Impac Mortgage Holdings, Inc.*,
   No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607
   (C.D. Cal. May 1, 2006) ..........................................................................................8

*Singer v. Nicor, Inc.*,
   No. 02 C 5168, 2002 WL 31356419
   (N.D. Ill. Oct. 16, 2002).....................................................................................4, 10

*Soden v. Castle & Cooke, Inc.*,
   No. 00-1-0145 (D. Haw.).........................................................................................6

Plaintiff Edgar Cobb ("Plaintiff Cobb") hereby files this Opposition to Plaintiff Morton Finkel, Jeffrey Feinman and Jeffrey Veigel's (collectively the "Finkel Plaintiffs Group") Motion for Consolidation of Related Actions and Appointment of Plaintiffs' Lead and Liaison Counsel (Docket Entry No. 9) and also hereby concurrently files this Cross Motion for Appointment of Plaintiffs' Lead Counsel.[1]

## I.   INTRODUCTION

The appointment of a lead counsel carries with it significant responsibilities to represent the interests of absent class members. *See generally In re Ivan F. Boesky Sec.*, 948 F.2d 1358 (2d Cir. 1991) ("Of course, authority to negotiate for all classes carries with it responsibilities."). Accordingly, the question this Court must answer in ruling on the Finkel Plaintiffs Group's Motion for Appointment of Lead Counsel is whether the proposed leadership structure will best protect those class interests. The answer to that question is ***not*** the three-pronged law firm structure proposed by the Finkel Plaintiffs Group. Instead, Plaintiff Cobb's chosen counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), represents the most effective and efficient choice possible to vigorously represent the interests of the shareholder class in this litigation.

A streamlined lead counsel consisting of the single best qualified law firm, Robbins Geller, will allow for more efficient and effective litigation while vigorously advocating on behalf of the

---

[1]   Plaintiff Cobb does not contest the Motion for Consolidation of the Related Actions, but does contest the Finkel Plaintiffs Group's Motion for Appointing Plaintiffs' Lead and Liaison Counsel. The "Related Actions" refer to:  (1) *Finkel v. American Oil & Gas, Inc., et al.*, No. 1:10-cv-01808-CMA-MEH; (2) *Cobb v. American Oil & Gas Inc., et al.*, No. 1:10-cv-01833-PAB-MEH; (3) *Feinman v. American Oil & Gas, Inc., et al.*, No. 1:10-cv-01846-MSK-KMT; and (4) *Veigel v. American Oil & Gas Inc., et al.*, No. 1:10-cv-01852-LTB.

shareholder class.  Robbins Geller is, without question, the law firm best qualified to represent the interests of shareholders in the Related Actions.  Robbins Geller is a firm of over 190 attorneys nationwide that has an unmatched record of achieving tremendous results for shareholders when prosecuting class actions, as a whole, and corporate takeover situations, like the one before the Court.  No other law firm can lay stake to Robbins Geller's exceptional record of litigating merger cases both before and after the merger takes place.  No other law firm possesses the willingness and ability to litigate complex cases, such as this one, through trial and beyond when necessary.  And, no other law firm has secured the degree of benefits for shareholders with its efforts to protect them in the takeover context.

Through its aggressive efforts in prosecuting corporate takeover cases prior to the transaction closing, Robbins Geller has secured billions of dollars in consideration and related benefits for shareholders.  For example, in *In re Chiron S'holder Deal Litig.*, No. RG 05-230567 (Cal. Super Ct., Alameda County), Robbins Geller's efforts helped to obtain an additional $800 million for Chiron shareholders.  In the *Harrah's Entertainment* litigation, Robbins Geller's active prosecution of the case on several fronts, both in federal and state court, assisted *Harrah's* shareholders in securing an additional $1.65 billion in merger consideration.  More recently, Robbins Geller secured an additional 4% in merger consideration for shareholders in connection with the leveraged buyout of Restoration Hardware, Inc. (*Hattan v. Restoration Hardware Inc*., No. CV 075563 (Cal. Super. Ct., Marin County)), and an additional payment of $25 million in the form of a cash dividend for shareholders in connection with the merger between Electronic Data Systems Corp. and Hewlett Packard Co. (*In re Electronic Data Systems Class Action Litig*., No. 366-01078-2008 (Collin County Dist. Ct., Tex.)).

- 2 -

578190_1

And, although the law firms that comprise the Finkel Plaintiffs Group may try to lay claim to comparable results in litigating takeover cases prior to the merger's close, no law firm, including those in the Finkel Plaintiffs Group, can boast of the results that Robbins Geller has achieved in litigating takeover cases after the merger closes.  Over the past three years alone, Robbins Geller attorneys have secured over $250 million in post-merger common fund settlements by actively and aggressively litigating cases where most firms would simply throw up their hands and cut their losses.[2]  No other firm can claim both the willingness and ability to take cases such as this to trial, if need be, and no other firm can demonstrate anything near the results achieved by Robbins Geller.

Beyond the superior qualifications and tenacity of Robbins Geller, the structure proposed by the Finkel Plaintiffs Group poses a serious risk of inefficient prosecution that may undermine the ability of counsel to effectively protect the interests of American Oil & Gas Inc. ("American Oil" or the "Company") shareholders.  The Finkel Plaintiffs Group currently fronts *three* separate law firms as "lead" counsel, with an additional law firm as "liaison" counsel.  Put simply, "three heads are not necessarily better than one, especially" when it comes to multiple-counsel structures.  *Freedom,*

---

[2]      *See In re Chapparal Resources, Inc. S'holders Litig.*, No. 2001-N (Del. Ch.) (post-trial) (Declaration of Darren J. Robbins in Support of Plaintiff Edgar Cobb's Cross-Motion for Appointment of Lead Counsel ("Robbins Decl."), Ex. A), $25 million in *In re Prime Hospitality, Inc. S'holders Litig.*, No. 652-CC (Del. Ch.) (Robbins Decl., Ex. B), $24 million in *In re eMachines, Inc. Acquisition Litig.*, No. 01-CC-00156 (Cal. Super. Ct., Orange County) (Robbins Decl., Ex. C), $5 million in *Fisch v. SSA Global Technologies, Inc.*, No. 06-CH-10636 (Cook County Cir. Ct., Ill.) (Robbins Decl., Ex. D), $5 million in *Pang v. Dwight*, No. 231989 (Cal. Super. Ct., Sonoma County) (Optical Coating Litigation) (Robbins Decl., Ex. E), $40 million in *In re Dollar General Corp. S'holders Litig.*, No. 07MD-1 (Davidson County 6th Cir. Ct., Tenn.) (Robbins Decl., Ex. F), $50 million in *In re TD Banknorth S'holders Litig.*, No. 2557-VCL (Del. Ch.) (Robbins Decl., Ex. G), $16 million in *In re PETCO Animal Supplies, Inc. S'holder Litig.*, No. GIC-869399 (Cal. Super. Ct., San Diego County), and $69 million in *In re ACS Shareholders Litig.*, No. 4940-VCP (Del. Ch.).

*N.Y., Inc. v. United States*, 49 Fed. Cl. 713, 719 (Fed. Cl. 2001) (noting that two of the three lead law firms in that case were "doing research and investigation that the first already has performed").[3]  In the words of the Northern District of Ohio:

> The greater the number of persons comprising the group the more difficult it is for those persons to communicate with each other, and to speak with a single coherent voice when making decisions about the conduct of the litigation, or, more precisely, the conduct of the attorney or attorneys in prosecuting the litigation.

*In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 816 (N.D. Ohio 1999).  As in *Telxon*, this proposed structure will harm the class and will continue to impede prosecution of this case by fostering duplication of effort, multiplication of costs, and the perpetuation of significant communication difficulties.  *Id.*

Indeed, federal courts routinely reject the triumvirate lead counsel arrangement suggested by the Finkel Plaintiffs Group.  *See, e.g.*, *Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 WL 31356419, at *1 (N.D. Ill. Oct. 16, 2002) (rejecting a three-pronged leadership structure because court could "foresee a number of reasons why such an arrangement would be less beneficial: increased costs and a more cumbersome decision-making process raise the greatest concerns"); *In re Reliant Sec. Litig.*, No. 02-1810, 2002 U.S. Dist. LEXIS 27777, at *11 (S.D. Tex. Aug. 29, 2002) (noting that appointment of multiple counsel "more commonly will create needless complications, administratively and otherwise, substantial multiplicity of effort, and materially increase litigation costs").

---

[3]     Unless otherwise noted, all emphasis is added, and citations and footnotes are omitted.

578190_1

Robbins Geller is the best qualified and the law firm that will best protect the interests of the class by litigating this matter far more efficiently than a three-headed counsel structure.  Thus, the Court should deny the Finkel Plaintiffs Group's Motion for Appointment of Lead Counsel and should grant Plaintiff Cobb's Cross-Motion for Appointment of Lead Counsel.

## II.   ROBBINS GELLER IS THE LAW FIRM BEST QUALIFIED TO REPRESENT THE INTERESTS OF THE SHAREHOLDERS AND WILL DO SO IN THE MOST STREAMLINED, EFFICIENT MANNER POSSIBLE

Plaintiff Cobb requests that the Court appoint Robbins Geller as lead counsel in the Related Actions.  Robbins Geller has the most experience and success in handling shareholder litigation of any firm in the nation, including claims of breach of fiduciary duty like the one before the Court. *See Cortese v. Radian Group, Inc.*, No. 07-3375, 2008 WL 269473, at *7 (E.D. Pa. Jan. 30, 2008) (pointing out that the Enron court stated that "'[Robbins Geller] is comprised of probably the most prominent securities class action attorneys in the country'").

Robbins Geller is well-known for its extensive experience in prosecuting derivative and class actions in corporate takeover situations and has demonstrated its ability to efficiently, aggressively and effectively litigate these types of actions and protect the interests of shareholders.  Robbins Geller has, in numerous cases, secured billions of dollars of additional consideration as part of the eventual merger transaction.  *See In re Chiron S'holders Deal Litig.*, No. RG 05-230567 (Cal. Super. Ct., Alameda County) (additional $800 million in merger consideration); *In re Dole S'holders Litig.*, No. BC281949 (Cal. Super. Ct., Los Angeles County) (a $172 million increase in the merger consideration paid to Dole shareholders); *Feldman v. Walden Residential Props. Inc.*, No. CC-99-11645-07 (Dallas County Ct., Tex.) (forced the repurchase for cash of over $100 million of preferred stock); *Harbor Fin. Partners v. Irvine Apartment Communities*, No. 802731 (Cal. Super. Ct., Orange

- 5 -

County) ($25 million in estimated financial value for shareholders); *In re Cameron Ashley Sec. Transaction*, No. 00-0971-A (Dallas County Ct., Tex.) (obtained a $33 million benefit for shareholders); *Soden v. Castle & Cooke, Inc.*, No. 00-1-0145 (D. Haw.) (over $28 million in additional benefits); *In re Corrections Corp. S'holders Litig.*, No. 98-1257-III (Davidson County Ch. Ct., Tenn.) ($55 million worth of additional payments to shareholders); *Joseph v. Heisley*, No. 20188-NC (Del. Ch.) (97% increase in consideration paid to shareholders after full trial on merits); *In re Goody's Family Clothing, Inc. S'holder Litig.*, No. 165357-2 (Knox County Ch. Ct., Tenn.) (20% increase in consideration paid to shareholders); *In re iPayment, Inc. S'holder Litig.*, No. 05-1250-I (Davidson County Ch. Ct., Tenn.) (15% increase in consideration paid to shareholders); *Pennsylvania Avenue Partners LLC v. King Power Int'l Group Co., Ltd.*, No. A455306 (Clark County Dist. Ct., Nev.) (15% increase in consideration paid to shareholders).

Moreover, what sets Robbins Geller apart from other firms that may lay claim to playing a role in causing an increase in merger consideration in a breach of fiduciary duty action is Robbins Geller's singular effectiveness in securing post-merger common fund recoveries on behalf of a class of shareholders.  In fact, over the last three years, Robbins Geller has secured over $200 million in post-merger relief for shareholders, including a total of $41 million in *In re Chapparal Resources, Inc. S'holders Litig.*, No. 2001-N (Del. Ch.) (post-trial) (Robbins Decl., Ex. A), $25 million in *In re Prime Hospitality, Inc. S'holders Litig.*, No. 652-CC (Del. Ch.) (Robbins Decl., Ex. B), $24 million in *In re eMachines, Inc. Acquisition Litig.*, No. 01-CC-00156 (Cal. Super. Ct., Orange County) (Robbins Decl., Ex. C), $5 million in *Fisch v. SSA Global Technologies, Inc.*, No. 06-CH-10636 (Cook County Cir. Ct., Ill.) (Robbins Decl., Ex. D), $5 million in *Pang v. Dwight*, No. 231989 (Cal. Super. Ct., Sonoma County) (Optical Coating Litigation) (Robbins Decl., Ex. E), $40 million in *In re*

*Dollar General Corp. S'holders Litig.*, No. 07MD-1 (Davidson County 6th Cir. Ct., Tenn.) (Robbins Decl., Ex. F), $50 million in *In re TD Banknorth S'holders Litig.*, No. 2557-VCL (Del. Ch.) (Robbins Decl., Ex. G), $16 million in *In re PETCO Animal Supplies, Inc. S'holder Litig.*, No. GIC-869399 (Cal. Super. Ct., San Diego County), and $69 million in *In re ACS Shareholders Litig.*, No. 4940-VCP (Del. Ch.).

The *Prime Hospitality* litigation is an excellent example of Robbins Geller's tireless dedication to protecting the interests of shareholders in the takeover arena.  In *Prime Hospitality*, where Robbins Geller secured a $25 million post-merger common fund for shareholders, Robbins Geller did so only after opposing an unfair settlement by other plaintiffs' counsel and then taking up the interests of the class post-merger.  Understanding how difficult it is to achieve benefits of this sort, the Delaware Chancellor noted: "[H]ad it not been for the intervention of [Robbins Geller] . . . there would not have been a settlement that would have generated actual cash for the shareholders. So there was a clear effort that was beneficial to the class. . . .  That's quite an achievement on which I compliment [Robbins Geller]."  Relevant Excerpts from *In re Prime Hospitality, Inc. S'holder Litig.*, No. 652-CC, Settlement Hearing and Objections Transcript ("Transcript") at 43 (Del. Ch. Sept. 19, 2007) (Robbins Decl., Ex. H).  The Chancellor further also explained that the settlement was:

> [A] significant achievement by counsel on behalf of the proposed class at the outset to convince the Court that [the prior] settlement should not be approved, and gave new counsel a chance to find out if there was more value to be obtained.  So that in itself to me is a significant achievement.  It led, I think, ineluctably then to the benefit.

*Id*. at 42-43.

Likewise, Chancellor Lamb acknowledged similar efforts by Robbins Geller in *TD Banknorth*:

> This is one of the cases – there's probably been a half a dozen since I've been a judge that I handled which have – really through the sheer diligence and effort of plaintiffs' counsel – resulted in substantial awards for plaintiffs, after overcoming serious procedural and other barriers.  [I]t appears plainly from the papers that you and your co-counsel have diligently, and at great personal expense and through the devotion of many thousands of hours of your time, prosecuted this case to a successful conclusion . . . I thought you did an excellent job.

Relevant Excerpts from *In re TD Banknorth S'holder Litig.*, No. 2557-VCL, Settlement Hearing Transcript ("Settlement Transcript") at 11, 15 (Del. Ch. June 25, 2009).[4]  *See also In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.) (over $7 billion).  Indeed, the *Enron* recovery was the largest class recovery in United States history.[5]  Simply put, no other firm can claim such phenomenal results in litigating class actions.

---

[4]      *See* Robbins Decl., Ex. I.

[5]      Notably, in appointing Robbins Geller to serve as lead counsel to represent defrauded Enron shareholders, United States District Judge Melinda Harmon of the Southern District of Texas commented that Robbins Geller was "zealously prosecuting this litigation on Plaintiffs' behalf." *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002).  And in "reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court . . . found that the submissions of [Robbins Geller attorneys] stand out in the breadth and depth of its research and insight." *Id.*  In 2006, Judge Harmon issued a Class Certification Order stating that Robbins Geller is "comprised of probably the most prominent securities class action attorneys in the country." *In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).  Other courts agree that Robbins Geller is the most equipped law firm in the country to prosecute class action lawsuits.  *See Schriver v. Impac Mortgage Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *36 (C.D. Cal. May 1, 2006) ("[Robbins Geller] has extensive experience litigating securities class actions . . . [such that] [t]here is no real dispute among the movants regarding [Robbins Geller's] qualifications to prosecute this action."); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (finding that Robbins Geller "will represent deftly the class's interests").

- 8 -

578190_1

Moreover, as detailed in the firm's resume,[6] Robbins Geller has numerous attorneys dedicated to prosecuting this action on behalf of American Oil's shareholders. Robbins Geller can and will contribute all necessary resources for effective prosecution. Importantly, Robbins Geller is the largest, best capitalized plaintiffs' law firm in the Country, with over 180 attorneys nationwide, and having recovered billions of dollars for shareholders over the years. The importance of selecting the most well-capitalized law firms to represent American Oil's shareholders is even clearer when considering the resources and representation of the litigants on the other side of the bar. The defendants to this action are all well-capitalized litigants. In order to ensure that American Oil's shareholders are best represented against this impressive collection of counsel on the other side of the bar, the class needs an aggressive, well capitalized advocate willing to litigate this case effectively to its conclusion, up to and including trial, if necessary. Only Robbins Geller has the unique qualifications to fulfill this important role.

## III.   THE FINKEL PLAINTIFFS GROUP'S PROPOSED STRUCTURE THREATENS INEFFICIENCY AND UNNECESSARY EXPENSES

Courts prefer to appoint a single lead counsel instead of a multiple-counsel structure that "more commonly will create needless complications, administratively and otherwise, substantial multiplicity of effort, and materially increase litigation costs." *Reliant*, 2002 U.S. Dist. LEXIS 27777, at *11; *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) ("I do not see the need for two law firms [to serve as lead counsel]. This avoids the danger of unnecessarily duplicative attorney work and, ultimately, a lower recovery for the class."); *In re Veeco Instruments,*

---

[6]     Robbins Decl., Ex. J.

*Inc.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005) ("I see no need for liaison counsel in this case and I decline to appoint liaison counsel."); *Friedman v. Rayovac Corp.*, 219 F.R.D. 603, 605-06 (W.D. Wisc. 2002) (rejecting request to appoint multiple lead counsel in class case and collecting numerous cases); *Bell v. Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 WL 638571, at *5-*7 (N.D. Tex. Apr. 18, 2002) (declining to appoint three law firm lead counsel structure); *Miller v. Ventro Corp.*, No. C 01-01287 SBA, 2001 WL 34497752, at *13-*14 (N.D. Cal. Nov. 28, 2001) (noting general antagonism to multiple counsel structure and directing parties to demonstrate the need for such a structure); *In re Milestone Sci. Sec. Litig.*, 187 F.R.D. 165, 180-81 (D.N.J. 1999) (rejecting "litigation by committee approach" and declining to appoint multiple counsel structure because there was "no reason to burden the Plaintiff Class with additional counsel fees, delay or confusion which would result from the appointment of multiple counsel").

To illustrate, in *Singer*, 2002 U.S. Dist. LEXIS 19884, Judge Lindberg rejected a three-headed lead plaintiff structure just like the structure proposed by the Finkel Plaintiffs Group.  The Court explained that he could "foresee a number of reasons why such an arrangement would be less beneficial: increased costs and a more cumbersome decision-making process raise the greatest concerns." *Id.* at *4.  Similarly, Judge Werlein from the Southern District of Texas noted that appointment of multiple counsel "more commonly will create needless complications, administratively and otherwise, substantial multiplicity of effort, and materially increase litigation costs." *Reliant*, 2002 U.S. Dist. LEXIS 27777, at *11.  *See also Telxon*, 67 F. Supp. 2d at 817 (rejecting three-tiered, three firm counsel approach because it "raises serious questions about [the law] firms' ability to represent 'adequately' the interests of a broad class of plaintiffs").

Of further concern is the inability of such a construct to make decisions quickly and efficiently, which will be necessary to produce the greatest benefit for shareholders in litigation of this sort, which can be particularly fast-moving:

> *The greater the number of persons comprising the group the more difficult it is for those persons to communicate with each other, and to speak with a single coherent voice* when making decisions about the conduct of the litigation, or, more precisely, the conduct of the attorney or attorneys in prosecuting the litigation.

*Id.* at 815-16.  For this reason, courts do not generally allow plaintiff conglomerations, such as the one proposed here, unless the proponents "demonstrate the cohesiveness of their purported 'group.'" *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000).  A three-pronged lead plaintiff group, "whose relationship was forged only in an effort to win appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult."  *Crawford v. Onyx Software Corp.*, No. C 01-1346L, 2002 WL 356760, at *2 (W.D. Wash. Jan. 10, 2002).  Indeed, the *MicroStrategy* court faced just such a scenario, and set forth its conclusions as to the genesis of the plaintiff amalgamation in words that apply directly to this litigation:

> [T]his group retained *three* law firms to serve as co-lead counsel; this fact suggests the group was merely a diverse collection of plaintiffs assembled by these three firms for the purpose of winning the lead plaintiff role, allowing them to share the lead counsel role.

*In re MicroStrategy Inc., Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000).

The Finkel Plaintiffs Group proposes just such an unwieldy, three-headed counsel structure. But nowhere does their Motion explain how their proposed structure will promote efficiency or cost savings.  Appointing three law firms to head up the litigation will *necessarily* lead to a wasteful duplication of effort.  Only Plaintiff Cobb's proposal makes sense – one single firm, Robbins Geller,

578190_1

to serve as lead counsel for the class.  Robbins Geller's single appointment will ensure that the benefits of consolidation flow to both the class and the Court and as described above, Robbins Geller is best suited to direct the efficient and cost-effective litigation of this action.

## IV.    CONCLUSION

For the reasons set forth above, plaintiff respectfully requests that the Court deny the Finkel Plaintiffs Group's Motion for Appointment Lead Counsel and should grant Plaintiff Cobb's Cross-Motion for Appointment of Lead Counsel.

DATED:  September 10, 2010                   Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
DAVID A. KNOTTS
EUN JIN LEE


                                  s/ Darren J. Robbins
                       DARREN J. ROBBINS

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs and
Attorneys for Plaintiff Edgar Cobb

- 12 -

GOLDFARB BRANHAM, LLP
HAMILTON LINDLEY
2501 North Harwood Street, Suite 1801
Dallas, TX  75201
Telephone:  214/583-2233
214/583-2234 (fax)

Additional Counsel for Plaintiff Edgar Cobb

- 13 -

CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2010, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on September 10, 2010.

s/ Darren J. Robbins
DARREN J. ROBBINS

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: drobbins@rgrdlaw.com

# Mailing Information for a Case 1:10-cv-01808-CMA -MEH

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey Allen Berens**
  jeff@dyerberens.com,kristin@dyerberens.com,jeffreyberens@comcast.net

- **Darby K. Kennedy**
  darby@dyerberens.com

- **Patrick H. Pugh**
  pughp@ballardspahr.com,myersr@ballardspahr.com

- **Katherine Allison White**
  whiteka@ballardspahr.com,vanordstrandj@ballardspahr.com,dawsonm@ballardspahr.com,snider@ballardspahr.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)