IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 10-cv-01808-CMA-MEH
(Consolidated with 10-cv-01833-PAB-MEH, 10-cv-01846-MSK-KMT, and 10-cv-01852-MSK-MJW)

MORTON FINKEL,
JEFFREY P. FEINMAN, and
JEFFREY VEIGEL, Individually and
on Behalf of All Others Similarly Situated,

 Plaintiff,

v.

AMERICAN OIL & GAS, INC., a Nevada corporation,
PATRICK D. O'BRIEN,
ANDREW P. CALERICH,
JON R. WHITNEY,
NICK DEMARE,
C. SCOTT HOBBS,
HESS CORPORATION, a Delaware corporation, and
HESS INVESTMENT CORP., a Nevada corporation,

 Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY FEES AND REIMBURSEMENT OF EXPENSES

---

This matter is before the Court on Plaintiffs' "Motion for Attorney Fees and Reimbursement of Expenses."[1] (Doc. # 69.) Plaintiffs request $850,000 in fees and expenses; Defendants urge the Court to award no more than $200,000. For the

---

[1] Because this Motion is strictly for attorneys' fees and expenses, referring to it as "Plaintiffs'" – instead of "Plaintiffs' counsels'" – is something of a misnomer. Nonetheless, for ease of reference, the movants here will be denominated "Plaintiffs."

reasons discussed below, the Court grants the motion in part, denies it in part, and awards Plaintiffs $200,000 in attorneys' fees and expenses.

## I. BACKGROUND

Plaintiffs commenced this class action lawsuit on behalf of shareholders of American Oil & Gas, Inc. ("American Oil") following a proposed merger between American Oil and Hess Corporation ("Hess").[2] (Doc. # 1.) In the October 29, 2010 Consolidated Amended Complaint (Doc. # 52), Plaintiffs raised two claims: (1) breach of fiduciary duties, against Patrick D. O'Brien, Andrew P. Calerich, Jon R. Whitney, Nick DeMare, and C. Scott Hobbs (the "Individual Defendants") and American Oil; and (2) aiding and abetting such breaches, against Hess Corporation and Hess Investment Corporation ("Hess").[3] Plaintiffs' primary assertion was that Hess would acquire American Oil "via an unfair process and at an unfair price, and shareholder approval [of the merger] would be procured by disseminating a false and materially misleading proxy statement in connection with the Proposed Buyout."[4] (*Id.* at 1.)

On November 19, 2010, Defendants moved for the Court to preliminarily approve a settlement that the parties had reached. (Doc. # 61.) After holding a hearing on

---

[2] Around the same time, numerous other "shareholder class actions challenging the merger" were brought "in Colorado and Nevada state courts, this Court, and the District Court for the State of Nevada." (Doc. # 69 at 3.) Several of these actions were consolidated before this Court, while others proceeded concurrently in Nevada state court. (*Id.*)

[3] The Individual Defendants, American Oil, and Hess will be referred to collectively as "Defendants."

[4] Plaintiffs invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332 and based the suit "upon the statutory or common law of Nevada" (Doc. # 52 at 6), the State in which American Oil was incorporated.

January 31, 2011, the Court approved a "Final Judgment and Order Approving Class Action Settlement." (Doc. # 96.) Attorneys' fees were not awarded as part of the Final Judgment and Order. Rather, by separate motion on December 20, 2010, Plaintiffs requested attorneys' fees and expenses. (Doc. # 69.) Defendants filed their opposition on January 14, 2011 (Doc. # 80), and Plaintiffs replied on January 25, 2011 (Doc. # 89). Defendants filed a surreply on February 4, 2011. (Doc. # 97.) The Court held a hearing on March 18, 2011, and, after counsel for both parties argued the attorneys' fees issue, the Court took the matter under advisement. (Doc. # 112.)

## II. LEGAL STANDARD

"In diversity cases, attorney fees are a substantive matter controlled by state law." *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008). In the instant case, Defendants assert that "the fee application is governed by Nevada law, the state of American's incorporation."[5] (Doc. # 80 at 4.) Although Plaintiffs initially urged the Court to address the reasonableness of the fee request under the "*Johnson* factors," *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[6] *abrogated in*

---

[5] Under Nevada law, a court determining attorneys' fees "is not limited to one specific approach; its analysis may begin with any method rationally designed to calculate a reasonable amount, including those based on a 'lodestar' amount or a contingency fee." *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 549 (Nev. 2005). However, the court "must continue its analysis by considering . . . [the attorneys'] professional qualities, the nature of the litigation, the work performed, and the result." *Id.*

[6] The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, e.g.*, *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 n.3 (10th Cir. 1995).

3

*part on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989), and the federal "lodestar" approach, they subsequently agreed with Defendants' conclusion that, in this case, Nevada law and federal law "essentially call for the same inquiry" (Doc. # 80 at 5).[7] (*See* Doc. # 112 at 16.) That inquiry, which the Court endorsed at the January 31, 2011 settlement hearing (Doc. # 99) and the March 18, 2011 attorneys' fees hearing (Doc. # 112), focuses primarily on the benefits conferred to the shareholders as a result of the litigation, and secondarily on other issues including the amount of time Plaintiffs' counsel spent litigating the action and fee awards in analogous cases.

### III. ANALYSIS

**A. BENEFIT CONFERRED**

Attorneys' fees may be awarded following class-action settlements where a non-monetary benefit is conferred on the class. *See, e.g.*, *Merola v. Atl. Richfield Co.*, 515 F.2d 165, 169-170 (3d Cir. 1975). Such a benefit can include "a heightened level of corporate disclosure" attributable to the litigation. *Tandycrafts, Inc., v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989); *see Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995) ("litigation that enhances [corporate] suffrage benefits all those eligible to vote").

In the instant case, the agreement reached by the parties produced a non-monetary, "disclosure-only" settlement. Defendants agreed to "supplement disclosures

---

[7] For a similar reason, the Court notes that, even if it engaged in a choice-of-law analysis, and even if that analysis convinced the Court to apply Colorado law to the issue of attorneys' fees, the framework for determining the reasonableness of such fees would be unaffected because Colorado employs the "*Johnson* factors" when determining attorneys' fees in merger-related class actions. *See, e.g.*, *Brody v. Hellman*, 167 P.3d 192, 200 (Colo. App. 2007).

contained in their Preliminary Proxy Statement and Amended Preliminary Proxy Statement by filling with the SEC a Second Amended Preliminary Proxy Statement containing certain additional disclosures recommended by the Plaintiffs." (Doc. # 61-1 at 15.) Plaintiffs assert that these were "significant additional material disclosures" that conferred "substantial benefits" on the shareholders—namely, enabling them to "make a fully informed decision whether to approve the Merger." (Doc. # 69 at 2.) The Court agrees, as indicated at the prior hearings, that the disclosures were sufficient to support the settlement.[8] But, for the following reasons, the Court also concludes, in agreement with Defendants, that the benefits conferred were moderate at best.[9]

First, the supplemental disclosures, which were effectively line edits to the Proxy statements, represent a small fraction of the total disclosures made. All told, the supplemental disclosures amount to approximately one-and-a-half pages of additional information. (*See* Doc. # 61-3.) The relatively short disclosures here stand in sharp

---

[8] For instance, the Court views the supplemental disclosures in the following areas as beneficial to the voting shareholders: "*Select Oil-Weighted Transaction Statistics Analysis*" (Doc. # 61-3 at 45-46); "*Net Asset Valuation Analysis*" (*id.* at 48); and "*Discounted Cash Flow Analysis*" (*id.*).

[9] The Court rejects Plaintiffs' assertion that it should disregard Defendants' argument about the substantiality of the benefit conferred by the supplemental disclosures as being in violation of the parties' agreement. (*See* Doc. # 89 at 11.) Their agreement states that "Defendants do not dispute that Plaintiffs' Supplemental Disclosures, in the aggregate, benefitted the Settlement Class." (Doc. # 61-1 at 16.) The Court reads that agreement, set forth in Section III of the Stipulation and Agreement of Settlement and Release, as pertaining to the terms of the Settlement (*see id.* at 15-18), not as affecting the disposition of attorneys' fees, which are discussed in Section VII of that document (*see id.* at 22-24). Regarding attorneys' fees, "Defendants reserve[d] all rights, positions, arguments, and defenses as to an Attorneys' Fees and Expenses Award greater than $200,000." (*Id.* at 23.) Further, Defendants clearly articulated the position they advance here during the January 31, 2011 Settlement Hearing. (*See* Doc. # 99 at 13 ("What we agreed was that the disclosures were in aggregate material, and we reserved for ourselves the right to argue about any individual disclosure and also the total amount and value of the disclosures . . . .").)

contrast to those in other cases including, for example, *Globis Capital Partners, LP v. Safenet Inc.*, No. 2772 (Del. Ch. Dec. 20, 2007), which Plaintiffs cite (Doc. # 90-13). In *Globis*, class counsel garnered a $1,200,000 attorney fee award for a disclosure-only settlement, but the supplemental disclosures there amounted to about 100 pages of additional financial information. (*See* Doc. ## 98-14, 98-15.)

Second, although some of the supplemental disclosures conferred a benefit on the shareholders, taken together they are not very substantive. None of them altered the financial terms of the merger or the consideration offered, corrected a prior misstatement, or introduced a previously undisclosed topic of disclosure. In fact, some of the supplemental disclosures further substantiated Defendants' position, which they have maintained since the suit was filed, that the merger price and process were fair.[10] Moreover, a few of the disclosures appear to be entirely superfluous. For instance, one reads:

> Tudor Pickering[11] used the applicable 2015 NYMEX Forward Strip prices for the periods after 2015 in its analyses that called for NYMEX Forward Strip prices in periods after 2015. Tudor Pickering used the applicable 2014 Wall Street Consensus prices for periods after 2014 that called for Wall Street Consensus prices in periods after 2014.

(Doc. # 61-3 at 44.) Such disclosures, and even those which provided some actual benefit to the shareholders, do not merit the amount of fees Plaintiffs request. *See, e.g., Augenbaum v. Forman*, No. Civ. A. 1569-N, 2006 WL 1716916, at *2 & n.3 (Del.

---

[10] For example, the disclosures clarified the absence of a conflict of interest regarding the executive officers of American Oil and the Board of Directors's investment banker, Tudor Pickering. (Doc. # 61-3 at 32-33.)

[11] American Oil's Board of Directors hired Tudor Pickering to offer a fairness opinion of the merger. (*See, e.g.*, Doc. # 112 at 26.)

Ch. June 21, 2006) (unpublished) (awarding $225,000 in fees for disclosure-only settlement where the supplemental disclosures contained important details about the merger, including a disclosure that the buyer had "at one point submitted a written proposal with a low range above the eventual merger price").

Third, Plaintiffs offer no evidence – in the form of affidavits or otherwise – demonstrating that the supplemental disclosures benefitted the shareholders to the extent Plaintiffs assert. Instead, two of the class representatives testified that they were capable of deciding whether to support the merger without the supplemental disclosures. (*See* Doc. ## 81-7 (deposition of Jeffrey Veigel), 81-8 (deposition of Jeffrey P. Feinman).)

Accordingly, although the supplemental disclosures did provide a benefit to the shareholders, such benefit was significantly less substantial than Plaintiffs assert.[12]

## B. WORK PERFORMED

Plaintiffs next assert that they "expended approximately 2,091.75 total hours in the litigation efforts that resulted in the benefits achieved." (Doc. # 69 at 3.) According to the billing rates of the firms involved,[13] Plaintiffs state that they would normally be entitled to $1,036,279.80[14] and that, therefore, "$850,000 represents more than fair

---

[12] The Court will not entertain Plaintiffs' argument that they caused Defendants to update information in the proxy statements regarding a potential dividend payment to the shareholders. (Doc. # 69 at 22.) The settlement agreement did not rely on, let alone mention, this "Dividend Disclosure" (*see* Doc. # 61-1), and the Court finds that, notwithstanding their suggestion to the contrary (Doc. # 89 at 10-11 n.8), Plaintiffs are not entitled to take discovery now on this issue.

[13] Plaintiffs seek compensation for attorneys representing eight separate law firms.

[14] Plaintiffs also assert that they incurred "litigation expenses in the amount of $84,748.49." (*Id.*)

and reasonable compensation for the services provided to the Class . . . ." (*Id.*)
The Court disagrees that all of the hours claimed helped produce the settlement and
attendant supplemental disclosures.[15]

To begin with, Plaintiffs have not persuaded the Court that they exercised good
"billing judgment" as they are bound to do, *Hensley v. Eckerhart*, 461 U.S. 424, 437
(1983), and as the Court required (*see* Doc. # 36). Plaintiffs maintain that there "was
no duplication of effort, only coordination." (Doc. # 89 at 9.) But such a statement is in
tension with the previous assertion of one of the law firms seeking reimbursement here
that having three firms "head up the litigation will **necessarily** lead to a wasteful
duplication of effort." (Doc. # 22 at 11 (emphasis in original).) Plaintiffs cannot have it
both ways. As indicated by the Court having preliminarily appointed only two firms as
settlement class counsel (*see* Doc. # 65), duplication of effort was likely, if not
inevitable, if three law firms took the helm. Of course, the problem worsens as the
number of firms involved – here, eight – increases.

Plaintiffs also fail to offer a convincing explanation as to how there could have
been no duplication of effort in light of the other, virtually identical, actions they filed
here and in Nevada. Indeed, the numerous briefs – 41 by Defendants' count (Doc.
# 113 at 6) – that Plaintiffs filed to avoid litigating this case in a single forum
demonstrate duplication of effort, to say nothing of time spent on tasks that have

---

[15] Consistent with the United States Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Court will not dissect Plaintiffs' billing statements, which are in excess of 140 pages, to address every hour that is not compensable. Instead, the Court will focus on the major insufficiencies in Plaintiffs' request.

no obvious correlation to the eventual benefit conferred on the shareholders. On this point, Plaintiffs offer the singularly unconvincing argument that the fees and expenses they incurred while fighting Defendants' removal motions and motions to dismiss the Nevada actions should be included in a fee award because "defendants' venue-shopping . . . made those expenditures necessary." (Doc. # 89 at 5 n.4.) In addition to evincing a misunderstanding of the notion of venue-shopping, Plaintiffs' statement also betrays a logic that the Court rejects out of hand – namely, that class action lawyers should be rewarded for "applying additional leverage," as Plaintiffs put it (*id.*), by filing numerous carbon-copy lawsuits, opposing their consolidation, and then billing the defendant corporation for such opposition when a settlement occurs. Time spent on tasks like opposing consolidation does not strike the Court as reasonably related to the benefit conferred on the class by the parties' settlement agreement and, therefore, will not be compensated. *See, e.g.*, *Clawson v. Mountain Coal Co.*, No. 01-cv-02199, 2007 WL 4225578, at *10 (D. Colo. Nov. 28, 2007) (unpublished) (denying fees for time spent on a motion that did "nothing to clarify the parties' respective positions on the substantive issue").[16]

---

[16] The Court rejects Plaintiffs' assertion that it "has already agreed that Plaintiffs are entitled to be compensated for their efforts in other jurisdictions . . . ." (Doc. # 114 at 3.) The Court did not so agree, nor does the transcript Plaintiffs cite support their assertion. At the January 31, 2011 settlement hearing, one of Plaintiffs' attorneys stated, "We are not entitled to fees just for, you know, time spent drafting and negotiating disclosures, because none of that – settlement would not have been achieved if we did not arduously litigate the case up until that point. So the relation of the fees incurred to the benefit has to be viewed in the context of the entire litigation." (Doc. # 99 at 49.) The Court's response – "I agree" – was directed only toward counsel's request that the benefit "be viewed in the context of the entire litigation," which the Court clarified by immediately adding, "I will look at the entire scope." (*Id.*)

    Having reviewed the entire scope of the litigation, the Court has determined that much of the time spent in other jurisdictions cannot be compensated, as already discussed. However, for those tasks that did confer some benefit on the shareholders such as, for example, Plaintiffs'

Additionally, and for a similar reason, the Court disagrees with Plaintiffs' assertion that they should be compensated for time spent on claims that they abandoned or "agreed to compromise" as part of the settlement agreement. (Doc. # 89 at 6 (emphasis deleted).) Plaintiffs cite no authority, nor is the Court aware of any, supporting their alleged entitlement to attorneys' fees for bringing claims, such as the unfair process and unfair price claims here, which were released as part of the settlement agreement and which were, in fact, at least partially undercut by the supplemental disclosures. Rather, the Court agrees with Defendants, and the cases they cite, that Plaintiffs are not entitled to fees for time they spent attacking the substance of the merger, in light of the disclosure-only settlement. *See In re Triarc Cos. S'holders Litig.*, No. Civ. A. 16700, 2006 WL 903338, at *2 (Del. Ch. Mar. 29, 2006) (unpublished) (awarding $75,000 in fees when $250,000 had been requested and noting that "plaintiffs' counsel are not entitled to recover attorneys' fees for their work in connection with . . . later abandoned" claims); *State of Wisconsin Inv. Bd. v. Bartlett*, No. Civ. A. 17727, 2002 WL 568417, at *5 (Del. Ch. April 9, 2002) (unpublished) (in disclosure-only case, not awarding fees for time spent on tasks after disclosures were made and for those otherwise unrelated to the benefit conferred).

Finally, for two reasons the Court rejects Plaintiffs' argument that "**the best measure** of a fair fee for plaintiffs' lawyers is to measure the request against the legal fees of defendants." (Doc. # 89 at 1 (emphasis added).) First, Plaintiffs provide no authority supporting their position. Rather, they tender an excerpt from a settlement

---

having secured an expedited discovery order in Nevada, which arguably helped propel discovery here (*see* Doc. # 89 at 4), Plaintiffs will be compensated.

hearing in which the presiding judge suggested comparing the plaintiffs' and defendants' hours as "an interesting crosscheck." (*See id.*) Second, basing a plaintiff's fee award on what defendants paid their counsel would seem to encourage the filing, and eventual dismissal or settlement, of specious claims, because requiring defendants to defend any claims, meritorious or not, inflates the amount of time they must spend on the litigation and, thus, the amount of fees the plaintiff could seek. Therefore, in accordance with the Court's prior ruling (Doc. # 99 at 51), Defendants were not required to submit, and the Court did not consider, their billing statements.

Accordingly, Plaintiffs are entitled to compensation only for the time spent on tasks that produced a benefit for the shareholders.

**C.    ANALOGOUS CASES**

The Court's award in the instant case is in keeping with those ordered by other courts in similar cases. *See Amalgamated Clothing & Textile Workers Union*, 54 F.3d at 71 ($54,140 in attorneys' fees awarded); *Tandycrafts, Inc.*, 562 A.2d at 1167 ($180,000 awarded); *Brinckerhoff v. Texas E. Prods. Pipeline Co.*, 986 A.2d 370, 397 (Del. Ch. 2010) (awarding $80,000 where $500,000 was requested); *Forman*, 2006 WL 1716916, at *2 (awarding $225,000 where $450,000 requested); *In re Triarc Cos. S'holders Litig.*, 2006 WL 903338, at *2 (awarding $75,000 despite request for $250,000); *Bartlett*, 2002 WL 568417, at *1 (denying request of $7,259,263 in fees and $234,063 in costs and, instead, awarding $234,063 and $93,935, respectively); *In re Dr. Pepper/Seven Up Cos., Inc. S'holders Litig.*, No. 13109, 1996 WL 74214, at *5 (Del. Ch. Feb. 27, 1996) (unpublished) (awarding $300,000 where $690,000 had been requested); *In re Chicago*

*and N. W. Transp. Co. S'holders Litig.*, No. 14109, 1995 WL 389627, at *5 (Del. Ch. 1995) (unpublished) (finding request of $525,000 unreasonable and awarding $300,000); *Eisenberg v. Chicago Milwaukee Corp.*, No. 9374, 1988 Del. Ch. LEXIS 141, at *10 (Del. Ch. Oct. 25, 1988) (unpublished) ($300,000 in fees awarded). In all of these cases, as here, counsels' requests for fees were undergirded by a disclosure-only benefit and, with the exception of *Brinckerhoff*,[17] fees were contested.

Other cases – primarily those cited by Plaintiffs – are inapposite because either the benefit conferred on the class was more substantial than mere supplemental disclosures, or the fees were stipulated by the parties, or both. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 846-47 (E.D. Mo. 2005) ($2,250,000 fee award where the litigation "preserved substantial . . . assets, including cash"); *In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *58 (D.N.J. Mar. 25, 2010) (unpublished) (awarding $3,500,000 fee award in disclosure-only settlement, but noting that the defendants agreed to the fee, which they had negotiated with the plaintiffs in conjunction with a neutral third party); *In re The DirectTV Grp., Inc. S'holder Litig.*, No. 4581 (Del Ch. Nov. 25, 2009)[18] (unpublished) (awarding $7,000,000 in uncontested fees in case where settlement included changes to the merger agreement and the surviving corporation's charter). Thus, the Court is not persuaded by Plaintiff's

---

[17] In *Brinckerhoff*, a disclosure-only case, the parties stipulated to $500,000 in attorneys' fees. 986 A.2d at 395. But the court found that the supplemental disclosures did not warrant such high fees. Instead, referring to the supplemental disclosures, which encompassed two pages, as "skimpy," *id.*, the court awarded $80,000 in fees because "under our law, the supplemental disclosures merit a fee award of some amount," *id.* at 397.

[18] (*See* Doc. ## 69-1 and 81-9.)

assertion that the authorities they cite are "right on point for the task before the Court." (Doc. # 89 at 12.)

Accordingly, the Court finds that its award in the instant case is in line with awards ordered by other courts for disclosure-only settlements where the amount of fees was disputed.

## D.     OTHER FACTORS

Because the parties and the Court agreed that the benefit conferred was the most important issue to be analyzed, and because the parties otherwise devoted the majority of their arguments to the additional considerations discussed above, the Court will address in an abbreviated fashion only several other factors often considered by state and federal courts when determining whether to award attorneys' fees.

- **Professional qualities, experience, reputation, and ability.** No dispute exists over whether Plaintiffs are experts in this particular field of litigation. Rather, Defendants' argue, and the Court agrees, that Plaintiffs' expertise highlights the need to reduce the amount of fees they seek. To wit, and as previously addressed, compensation for every hour billed by eight specialized law firms would be unreasonable given the limited benefit secured by the settlement agreement.

- **Nature of the litigation, novelty and difficulty of the questions presented, and skill required.** Plaintiffs assert that this case "involved complex questions of corporate governance," but they also admit that it "did not break any new legal ground." (Doc. # 69 at 14.) Considering Plaintiffs' expertise in this area of the

13

law, the Court sees nothing particularly difficult, and certainly nothing novel, about the case. *See Bartlett*, 2002 WL 568417, at *6 (noting that litigation, which failed to enjoin a merger and only succeeded in procuring supplemental disclosures, "was not overly complex or difficult").

- **Undesirability of the case.**  For two reasons the Court rejects Plaintiffs' assertion that "[t]his Action was undesirable from the outset." (Doc. # 69 at 18.) First, as just mentioned, the case involved no novel legal issues. Thus, Plaintiffs' citation to *Lucas v. Kmart Corp.*, No. 99-cv-01923, 2006 U.S. Dist. LEXIS 51420 (D. Colo. July 27, 2006) (unpublished), is unavailing. As Judge Kane explained in *Lucas*, that case was undesirable precisely because of the several "unsettled legal issues" it presented. *Id.* at *20. Second, Plaintiffs filed this case within three days of American Oil and Hess announcing the merger, and they filed several other similar actions here and in Nevada, as already discussed. The speed with which Plaintiffs filed these actions, as well as their numerosity, indicates to the Court the opposite of what Plaintiffs assert – *i.e.*, that Plaintiffs wanted to litigate this case as soon as the opportunity to do so arose.

- **Whether the fee is fixed or contingent.**  Because the benefit conferred on the class was modest, the contingent nature of Plaintiffs' fees weighs against the amount they request. *See, e.g.*, *In re Instinent Grp., Inc. S'holders Litig.*, No. Civ. A. 1289-N, 2005 WL 3501708, at *3 (Del. Ch. Dec. 14, 2005) (unpublished) (noting, in merger objection case, that "where little is accomplished, the fact that

14

the case was undertaken on a contingent fee basis militates in favor of awarding only a modest fee that reflects the value of the benefits achieved. After all, where nothing is achieved, no fee at all is possible.").

- **The preclusion of other employment due to acceptance of the case and the time limitations imposed.** Although it is of course true that any time Plaintiffs spent litigating this case was time they were not able to devote elsewhere, they fail to identify any matters they were precluded from working on due to this litigation. However, the Court is persuaded that the truncated timeframe under which Plaintiffs operated weighs in their favor.

- **The nature and length of the professional relationship with the client.** Plaintiffs assert that they do not "expect to garner any future benefit in terms of repeat business vis-à-vis the ultimate clients in the case, members of the Class." (Doc. # 69 at 23.) But Jeffrey P. Feinman, one of the named Plaintiffs in this case, averred at his deposition that he has been represented in other class actions by Bragar, Wexler, Eagel & Squire PC, one of the firms seeking compensation here. (Doc. # 81-8.) Thus, the Court finds that Plaintiffs' assertion lacks credibility, as it ignores the history of repeat business between Plaintiffs and a named member of the class.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' "Motion for Attorney Fees and Reimbursement of Expenses" (Doc. # 69) is GRANTED IN PART to the extent that Plaintiffs are entitled to such fees and expenses, and DENIED IN PART to the extent

15

that Plaintiffs seek $850,000.  Instead, the Court ORDERS Defendants to reimburse Plaintiffs for their fees **and** expenses in the amount of $200,000.  It is

FURTHER ORDERED that, pursuant to the settlement agreement, Defendants shall have fifteen days to make such payment by check payable to "Bragar, Wexler, Eagel & Squire PC and Robbins Geller Rudman & Dowd LLP."

DATED: January   20  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge